UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Scott Mork, on behalf of himself and others similarly situated,

    Plaintiff,

v.

Loram Maintenance of Way, Inc.,

    Defendant.

Case No. 11-cv-2069 (MJD/FLN)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

---

**INTRODUCTION**

In this action for state and federal wage violations initiated by Plaintiff Scott Mork ("Plaintiff") on behalf himself and other similarly situated Field Application Technicians, Defendant Loram Maintenance of Way, Inc. ("Loram" or "Defendant") brings this motion under the Federal Arbitration Act ("FAA") to compel arbitration and stay the case.[1]  By the same motion, Defendant seeks to limit arbitration to an "individual basis" only.  Because "the employment contracts do not expressly authorize collective or representative arbitration," Defendant argues, arbitration on a collective basis may not proceed.  Plaintiff challenges the second part of Defendant's motion.  Under a

---

[1] On page 7 of Defendant's memorandum, Defendant states that "this case should be dismissed." (Def.'s Mem. at 7.)  However, in the motion's title and elsewhere in the brief Defendant appears to be moving to stay the case; therefore, Plaintiff will treat its request for dismissal as a typographical error.

1

straightforward interpretation of the arbitration agreement, there is express authority for collective arbitrations, as it identifies "statutory" claims and disputes as being arbitrable. Collective arbitration is also implicitly authorized by the parties' agreement, a permissible ground for allowing arbitration to proceed. Therefore, **all** of Plaintiff's claims – including those brought on behalf of the collective class – should proceed in arbitration.

## FACTUAL BACKGROUND

Defendant Loram is headquartered in Hamel, Minnesota. (Comp. ¶ 13.) It builds, leases, sells, and services railroad equipment for its domestic and international customers. (Id. at ¶ 14.) Loram first hired Plaintiff in 1989, and in 1992 promoted him to Field Application Technician. (Id. at ¶¶ 5-6.) In this position, Plaintiff installed and performed maintenance on railroad equipment. (Id. at ¶¶ 22.) After taking some time away from Loram in the mid-1990s, Plaintiff was hired in 1998 for summer employment. (Id. at ¶ 7.) In 2000, he returned to work for Defendant full-time, as a Field Application Technician. (Id. at ¶ 8.) Plaintiff has a two-year general education certificate from Normandale Community College. (Id. at ¶ 7.)

Before rehiring Plaintiff in 1998 and 2000, Loram required him to sign a form "Confidentiality and Assignment Agreement" ("CAA") as a condition of continued employment. (See Exs. A and B[2]; Def.'s Mem. at 6 ("Loram has required all employees to execute an employment contract as a term and condition of their employment.").) All

---

[2] Exhibits A and B referenced herein are attached to the Declaration of Robert C. Carlson, submitted in connection with Defendant's Motion.

Loram employees were required to sign CAAs. (Def.'s Mem. at 6.) Plaintiff signed two CAAs, one June 25, 1998 and one September 7, 2000. (Exs. A and B.) The second CAA is not signed by a Loram representative. (Ex. B.)

The CAAs are substantially similar.[3] As the titles suggest, they deal primarily with the confidentiality of company information and the agreements of employees not to compete with Loram. (See Ex. B at ¶¶ 1-7, 18-19.) In addition, they contain an arbitration agreement, which is indisputably broad. The second page, paragraph 8 reads:

> Arbitration. Any claims or disputes of any nature arising out of or relating to the employment relationship (exclusive of this agreement, or the breach, termination or invalidity thereof) shall be resolved exclusively by arbitration in accordance with the Model Employment Arbitration Procedures of the American Arbitration as are in force at the time of the claim or dispute. The place of arbitration shall be Loram's offices in Hamel, Minnesota. Loram and I shall equally share the fees and the cost of such arbitration. The Arbitrator and not and [sic] federal a, state, or local court or agency shall have the exclusive authority to resolve any dispute or claim relating to, arising out of, or resulting from my employment with Loram, the termination of my employment with Loram and specifically includes and any claim of discrimination including any claim arising under or based upon the Age Discrimination Employment Act, the Minnesota Human Rights Act, the Minnesota Age Discrimination Law, Title VII of the Civil Rights Act of 1984, the Americans with Disabilities Act and the Rehabilitation Act of 1973 and any contract, quasi-contract, estoppels, tort or statutory claims, whether developed or undeveloped arising out of or resulting from my employment with Loram. The American Arbitration Association ("AAA") shall administer any such arbitration. Any such arbitration shall be final and binding upon Loram and me. Judgment upon the award rendered nu the Arbitrator any [sic] be entered in any court having jurisdiction thereof. Any claim by Loram or me for punitive damages are hereby waived.

(Ex. B at ¶ 8.) Plaintiff worked at Loram as a Field Application Technician until May 3, 2011, when his employment was terminated. (Compl. ¶ 8.)

---

[3] Plaintiff hereafter cites to only the 2000 CAA.

Throughout his employment, Plaintiff – like other Field Application Technicians – often worked over 40 hours in a week. (Id. at ¶ 47.) Loram never paid him or other Field Application Technicians overtime compensation for these hours. (Id. at ¶ 45.) Sometime in 2008, Plaintiff and his boss, Paul Hettinger, had a conversation about overtime compensation. (Id. at ¶¶ 38-40.) Hettinger told Plaintiff that the new human resources manager had advised Hettinger that Loram was misclassifying field technicians and should be paying them overtime compensation. (Id.) When Plaintiff asked whether the company would start paying them overtime, Hettinger said, "We're gonna get around this by saying that you make business decisions." (Id.) Loram did not thereafter change its policy, and continued to not pay overtime compensation to Field Application Technicians. (Id. at ¶ 45.)

On July 26, 2011, Plaintiff filed this action against Defendant for violations of the Fair Labor Standards Act ("FLSA"), asserting that Loram failed to pay him and other Field Application Technicians overtime wages. (Id.) Plaintiff also asserts individual wage and recordkeeping violations against Loram under the Minnesota Fair Labor Standards Act ("MFLSA"). (Id.)

Defendant filed this motion to compel arbitration on August 31, 2001. (ECF No. 6.) Plaintiff now opposes this motion in part, for the reasons outlined in this Memorandum.

## ARGUMENT

I. **LEGAL STANDARD.**

Arbitration is a matter of contract. See <u>Stolt-Nielsen S.A. v. Animalfeeds Internat'l Corp.</u>, 130 S. Ct. 1758, 1773-75 (2010). Under the FAA, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Accordingly, two questions must be answered by a court examining a motion to compel arbitration: "1) whether a valid, enforceable arbitration agreement exists; and 2) whether the dispute falls within the terms of the agreement." <u>Wold v. Dell Fin. Services, L.P.</u>, 598 F. Supp. 2d 984, 987 (D. Minn. 2009).

II. **PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIM FALLS WITHIN THE PARTIES' BROAD ARBITRATION AGREEMENT.**

Plaintiff concedes that an arbitration agreement, albeit one-sided and at least partially unenforceable, exists.[4] Plaintiff, however, does not read the agreement as excluding Plaintiff's collective action claim from arbitrability. The agreement is broad. It reaches "**any** claims or disputes **of any nature** arising out of or relating to the employment relationship[,]" including "**statutory**" ones. (Ex. B at ¶ 8 (emphasis added).) Under the plain meaning of this agreement, Plaintiff's FLSA collective action

---

[4] Several of the agreement's terms purport to waive important, non-waivable rights and are unenforceable. (See Ex. B at ¶ 8 ("Loram and [Plaintiff] shall equally share the fees and the cost" of arbitration; "[t]he place of arbitration **shall be Loram's offices** in Hamel, Minnesota"; "[a]ny claim by Loram or me for punitive damages is hereby waived").) Because these arguments are to be decided by the arbitrator, Plaintiff will not address them here.

claim, which is a) a claim or dispute, b) arising out of or relating to the employment relationship, and c) statutory, is arbitrable under the agreement.

The scope of an arbitration agreement depends on its terms. Stolt-Nielsen, 130 S. Ct. 1758, 1773-75. "Parties are generally free to structure their arbitration agreements as they see fit." Id. at 1774 (internal quotations and citations omitted). An agreement to arbitrate class claims may be explicit or implicit in the parties' arbitration agreement, as long as it is grounded in the contract. Id. at 1775. When interpreting an arbitration agreement, just like any other contract, a court's compass is the intent of the parties. Id. at 1774-75.

Here, the arbitration agreement authorizes collective arbitration both explicitly and implicitly.

### A. The Plain Language of the Arbitration Clause Covers Collective Action Claims, Which Are "Statutory."

The parties' agreement to authorize arbitration of FLSA collective actions is explicit in the arbitration agreement itself. Simply put, this claim is arbitrable because it is a "claim[] or dispute . . . arising out of or relating to the employment relationship". (See Ex. B at ¶ 8.) Plaintiff asserts that Defendant violated the FLSA when it failed to pay him and others similarly situated overtime compensation. (Compl. ¶¶ 53-67.) This goes to the heart of the employment relationship: the payment of employees for work. Therefore, it falls squarely within the ambit of the agreement.

Even if one adopted Defendant's narrow interpretation of "employment relationship" to include only occurrences between Plaintiff and Defendant, collective

arbitration is still expressly covered. In addition to claims and disputes directly "arising out of" the employment relationship, the agreement covers claims and disputes "relating to" to the employment relationship. (Ex. B at ¶ 8.) The FLSA collective action overtime claim, brought on behalf of other Field Application technicians, "relates to" Plaintiff's employment relationship since the potential plaintiffs are necessarily "similarly situated" to him . See 29 U.S.C. § 216(b); Compl. ¶ 24 (defining the collective as "all persons who worked as a Field Application Technician for Defendant Loram Maintenance of Way, Inc. at any time since three years prior to the filing of this Complaint").

Furthermore, Plaintiff's collective action claim is "statutory", one of the categories expressly listed in the agreement as being arbitrable. (Ex. B at ¶ 8.) 29 U.S.C. § 216(b) of the FLSA provides that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiff's collective action claim is rooted in section 216(b), and thus is statutory. Therefore, it clearly falls under the arbitration agreement. Defendant's attempt to read "statutory" as covering Plaintiff's individual FLSA claim but not his FLSA collective action claim contravenes the FAA, principles of contract interpretation, and common sense. See 9 U.S.C. § 4 (court "shall make an order" for arbitration "in accordance with the terms of the agreement"); Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998) ("language is to be given its plain and ordinary meaning"; contract interpreted "so as to give meaning to all its provisions"; terms are to be

7

interpreted "in the context of the entire contract and will not construe the terms so as to lead to a harsh and absurd result"); Botello v. COI Telecom, LLC, No. SA-10-CV-305-XR, 2011 WL 5464864, at *11 (W.D. Tex. Dec. 30, 2010) ("It would turn Fifth Circuit FAA case law on its head to allow an individual to proceed in court under a FLSA collective action theory when the individual FLSA claim would surely be subject to arbitration.").

In sum, there is an express agreement to arbitrate Plaintiff's FLSA collective action claim, and therefore Defendant cannot avoid collective arbitration.

### B. The Agreement Implicitly Covers Collective Arbitration.

Even if no express authorization is found in the agreement, there is still a contractual basis for concluding that it covers collective arbitration. The parties' authorization is implicit in the broad and inclusive language, and the absence of an exception for collective and class arbitrations.

When there is no express authorization for arbitrating a certain claim, the court then considers whether a "contractual basis" exists to "support a finding that the parties agreed to authorize class arbitration." Stolt-Nielsen, 130 S. Ct. 1758, 1773-74, 1776 n.10. Although the parties in Stolt-Nielsen foreclosed the inquiry into an implied agreement to class arbitration by stipulating that there was "no agreement" on the subject, the parties here have not. See Smith & Wollensky Rest. Group, Inc. v. Passow, 2011 WL 148302, at *1-2 (D. Mass. Jan. 18, 2011) (distinguishing Stolt-Nielsen because parties did not stipulate that there was "no agreement" on the class arbitration issue); Galakhova v. Hooters of America, Inc., No. 34-2010-73111-CU-OE-GDS, at 2 (Cal. Super. Ct. July

27, 2010)[5] (same); Jock v. Sterling Jewelers, Inc., --- F.3d ----, 2011 WL 26609853, at *9 (2d Cir. 2011) ("plaintiff's concession that there was no explicit agreement to permit class arbitration . . . [was] not the same thing as stipulating that the parties had reached no agreement on the issue".).

The parties' intent here was for the arbitrator to sit in the place of a court and to change the forum for all employment disputes to arbitration, rather than the judicial system. Paragraph 8 submits "**any** claims and disputes" to arbitration that would otherwise be resolved in court. (Ex. B at ¶ 8 (emphasis added).) The only exclusions to this broad coverage are for "claims or disputes . . . of the agreement, or the breach, termination or invalidity thereof". (Id.) This exclusion list is both narrow and not open-ended. Defendant, who is a sophisticated, multimillion dollar company that has presumably been arbitrating its employment disputes at least since 1998, has not chosen to exclude class or collective claims from its broad agreement. The Court should not read in these exclusions. See Jock, 2011 WL 26609853, at *12 ("To read that right [for a class action] out of the arbitration agreement would fail to give effect to the employees' contractual rights and expectations of what the arbitration agreement provides."); Galakhova, (ordering class arbitration while noting that exclusion list, which was not open-ended, did not list class claims). Defendant drafted the agreement, and any ambiguities must be construed against it. See Advantage Consulting Group, Ltd. v. ADT Sec, Sys., 306 F.3d 582, 587-88 (8th Cir. 2002); Wick v. Murphy, 54 N.W.2d 805, 809

---

[5] A copy of this order is attached as Exhibit 1 to the Affidavit of Bonnie M. Smith submitted in connection with this Memorandum.

(Minn. 1952) (Where a contract is open to two interpretations, the one more favorable to the party who did not draft the instrument should be adopted in the absence of a clear showing that a contrary meaning was intended by the parties at the time of its execution.").

As a practical matter, Defendant has chosen to arbitrate with "all employees", under the same or similar terms as Plaintiff. (Def.'s Mem. at 6.) Therefore, in a collective arbitration, Defendant would not be exposed to arbitration with any parties it has not already agreed to arbitrate with. See Jock, 2011 WL 2509853, at *12 n.2 ("because [defendant] and each potential member of the putative class agreed to arbitrate their disputes, they implicitly agreed that they may seek to do so as a class, and [defendant] is certainly not being forced to arbitrate with anyone whom it did not require to arbitrate with.").

Because it is explicitly and implicitly covered by the arbitration agreement, Plaintiff's FLSA collective action claim should be permitted to proceed in arbitration.

### C. Stolt-Nielsen, Baesler, and ReliaStar Are Distinguishable.

In arguing that collective claims are not arbitrable, Defendant relies primarily on three cases – Stolt-Nielsen, Baesler v. Continental Grain Co., 900 F.2d 1193 (8th Cir. 1990), and ReliaStar Life Insurance Co. v. Canada Life Assurance Co., No. Civ.04-71 JNE/JGL, 2005 WL 615830 (D. Minn. Mar. 14, 2005). None of these cases, however, occurs in the employment context or deals with collective claims under the FLSA, § 216(b).

### 1. <u>Stolt-Nielsen</u>

Defendant's reliance on <u>Stolt-Nielsen</u> is misplaced. In that case, the Supreme Court considered the arbitrability of a class action in an antitrust matter. 130 S. Ct. 1740. Below, the arbitral panel found that the parties stipulated to reaching "no agreement" on the issue of class arbitration, but found nonetheless that class arbitration was authorized by the arbitration agreement. <u>Id.</u> at 1766. The district court granted a petition to vacate the arbitrators' award, and the Court of Appeals reversed. <u>Id.</u> The Supreme Court granted certiorari and reversed. <u>Id.</u> at 1768-77. It noted that the panel had looked beyond the parties' intentions to public policy consideration in order to support its conclusion, <u>id.</u> at 1768-70, and held that "where the parties stipulated that there was 'no agreement' on this question, it follows that the parties cannot be compelled to submit their dispute to class arbitration." <u>Id.</u> at 1776.

Defendant cites to <u>Stolt-Nielsen</u> to support its argument that "because Plaintiff's employment contracts do not contain a provision authorizing collective or representative arbitration, this rule means Plaintiff must be compelled to arbitrate his claim on an individual basis." (Def.'s Mem. at 10-11.) <u>Stolt-Nielsen</u> does not, however, stand for the proposition that class arbitration is only permissible when there is an explicit contractual term – only that mere silence cannot be the sole contractual basis for such a finding. To be sure, a court may not force parties to arbitrate as a class when there is agreement between the parties that the arbitration agreement is silent on class arbitration, nor may a court authorize class arbitration "solely from the fact of the parties' agreement to arbitrate", <u>Stolt-Nielsen</u> at 1775. However, it does not follow that class arbitration

11

agreement must be explicit to be enforceable. To the contrary, the Stolt-Nielsen Court recognizes that "implicit agreement[s] to arbitrate class-action arbitration" exist: "[i]n certain contexts, it is appropriate to presume that parties who enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement." Id. at 1775.

Many courts have rejected Defendant's argument under similar circumstances, and ordered class or collective arbitration. See, e.g., Smith & Wollensky, 2011 WL 148302, at *1-2 (denying defendant's motion to vacate arbitrator's clause construction award where arbitrator found that parties intended to permit class actions when their arbitration agreement covered "'any claim [that could' be resolved in a court of law under applicable state and federal law'"); Jock, 2011 WL 26609853 (2d Cir. 2011), at *7 (holding that arbitrator did not exceed authority in finding that the agreement allowed the parties to pursue class arbitration "even though the agreement lacked an express provision permitting class arbitration."). The Court should do so here.

### 2. Baesler

Baesler v. Continental Grain Co. is similarly unhelpful to Defendant. In Baesler, Continental entered into arbitration agreements with several safflower producers. 900 F.2d 1193 (8th Cir. 1990). These agreements, which were similar, "were silent on the issue of consolidation." Id. at 1194. A dispute arose between the company and the producers, and the producers arbitrated the dispute against the company. One producer brought an action in state court to consolidate the arbitrations under § 4 of the FAA. Continental removed the case to federal court, and the parties cross-filed for summary

judgment. The district court granted Continental's motion, finding that it did not have authority to consolidate the arbitration proceedings. Id. On appeal, the Eighth Circuit considered whether it had the power to consolidate arbitrations when the arbitration agreements are silent on the matter, and answered in the negative. Id. at 1194-95. It held that "absent a provision in an arbitration agreement authorizing consolidation, a district court is without power to consolidate arbitration proceedings." Id. at 1195.

Baesler has no bearing on this case. First, the arbitration agreement in Baesler was indisputably silent as to consolidation, unlike the agreement here. See supra, Part II.A. As a result, Baesler focused on the power of district courts under section 4 of the FAA over arbitrations already underway, rather than the arbitrability of a claim not yet in arbitration. Here, the parties do not appear to dispute the power afforded courts by section 4; both agree that that the court is to decide whether arbitration is authorized and what is arbitrable. Rather, the parties disagree on the arbitrability question itself. Second, Baesler dealt only with consolidation under the Federal Rules of Civil Procedure, Rules 42(a) and 81(a)(3), not collective actions under § 216(b) of the FLSA. Unlike consolidation, § 216(b) is a remedial statute, and it confers on individuals a right to bring an action on behalf of other similarly situated persons, not just alongside them. Third, Baesler takes place in the context of business sales and contracts, as opposed to the context of the often lopsided employment relationship. For these and other reasons, Baesler is inapposite.

### 3. **ReliaStar**

ReliaStar Life Insurance Co. v. Canada Life Assurance Co. derived from a dispute between multiple retrocessionaries, or reinsurers of reinsurers, and ReliaStar, a life insurance company, over the interpretation of reinsurance programs between them. No. Civ.04-71 JNE/JGL, 2005 WL 615830 (D. Minn. Mar. 14, 2005). Each retrocessionary "independently negotiated" with ReliaStar for its arbitration agreement. Id. at *1. After multiple retrocessionaries separately brought arbitrations against ReliaStar similar reasons, ReliaStar moved the district court to consolidate the arbitrations. Id. at *2. The district court denied the motion, citing to Baesler. It noted that no consolidation clause could be found in the arbitration agreements, and that ReliaStar, a sophisticated company with experience in arbitrations, should have included such a clause if it wanted to. Id.

ReliaStar is distinguishable from this case for many of the reasons Baesler is. In addition, the arbitration agreements in ReliaStar were individually negotiated, unlike here. Defendant's reliance on ReliaStar, like its reliance on Baesler and Stolt-Nielsen, is misplaced.

## CONCLUSION

For all the above reasons, and in accordance with the FAA's requirement to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement", the Court should permit Plaintiff's FLSA collective action claim to proceed to arbitration.

Dated: <u>September 21, 2011</u>     NICHOLS KASTER, PLLP

<div style="margin-left: 3em;">
s/Bonnie M. Smith<br>
Steven Andrew Smith, # 260836<br>
    smith@nka.com<br>
Bonnie M. Smith, # 0391915<br>
    bsmith@nka.com<br>
4600 IDS Center, 80 South 8th Street<br>
Minneapolis, MN  55402<br>
Telephone (612) 256-3200<br>
Fax (612) 215-6870<br>
<br>
ATTORNEYS FOR PLAINTIFF
</div>