**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

SCOTT MORK, on behalf of himself and
others similarly situated,

Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
**Civil No. 11-2069 (MJD/FLN)**

LORAM MAINTENANCE OF WAY, INC.,

Defendant.

---

Steven Andrew Smith and Bonnie M. Smith, Nichols Kaster, PLLP, Counsel for Plaintiff.

Joseph W. Hammell and Sarabeth A. Ackerman, Dorsey & Whitney LLP, Counsel for Defendant.

---

## I. Introduction

This matter is before the court on Defendant Loram Maintenance of Way, Inc.'s Motion to Compel Arbitration and for Stay of Proceedings. [Docket No. 4.] The Court heard oral argument on Friday, December 9, 2011. The Court concludes that an agreement between the parties requires arbitration and that Plaintiff Scott Mork may pursue his claim on a collective basis.

## II. Background

The following facts are alleged in Mork's Collective Action Complaint. [Docket No. 1.] Defendant Loram Maintenance of Way, Inc. ("Loram") builds, leases, and sells railroad maintenance equipment and supplies. Loram employed Mork as a Field Application Technician. In that capacity, Mork tested equipment before it was delivered to Loram's customers and provided support to customers after delivery. This work required frequent travel.

When traveling, Mork usually worked twelve-hour shifts and often worked more than 40 hours per week. Mork alleges that his supervisors were aware that he was working longer than 40 hours per week because Loram used an Enterprise Resource Planning system in which employees logged their hours.

Loram hired a new Human Resources Manager in 2008, who—according to Mork—informed Loram management that Field Application Technicians were eligible for overtime pay. Mork alleges that he asked a Loram manager if he would start to receive overtime pay and that the manger responded by telling him, "We're gonna get around this by saying that you make business decisions." Loram contends that he and other Field Application Technicians do not make business decisions at the company.

Mork brought this action against Loram, claiming that Loram failed to pay him and similarly situated employees overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Mork has also asserted individual claims under Minnesota law.

Mork signed two Confidentially and Assignment Agreements with Loram both of which contain a clause ("Arbitration Clause") which provides:

> Arbitration. Any claims or disputes of any nature arising out of or relating to the employment relationship (exclusive of this agreement, or the breach, termination or invalidity thereof), shall be resolved exclusively by arbitration in accordance with the Model Employment Arbitration Procedures of the American Arbitration [Association] as are in force at the time of the claim or dispute. The place of arbitration shall be Loram's offices in Hamel, Minnesota. Loram and I shall equally share the fees and the cost of such arbitration. The Arbitrator and not any federal, state, or local court or agency shall have the exclusive authority to resolve any dispute or claim relating to, arising out of, or resulting from my employment with Loram, the termination of my employment with Loram and specifically includes . . . any contract, quasi-contract, estoppel, tort or statutory claims, whether developed or undeveloped arising out of or resulting from my employment with Loram or the formation or the termination of my employment with Loram. . . .

(Confidentiality and Assignment Agreement ("CAA") ¶ 8, Carlson Decl. [Docket No. 8], Ex. B.)[1]

---

[1] Mork signed two Confidentiality and Assignment Agreements—one in 1998 and another in 2000. (See Carlson Decl., Exs. A & B.) As the two arbitration

Loram has moved to enforce the Arbitration Clause, requesting that the Court compel arbitration and stay its proceedings. Loram further argues that the Arbitration Clause precludes Mork from bringing a collective action on behalf of similarly situated employees. Loram therefore requests that the Court compel individual arbitration of Mork's claims. While Mork concedes that arbitration is required, he disputes Loram's contention that collective arbitration is ruled out by the Arbitration Clause.

## III. Discussion

Because the parties agree that the Court must order arbitration, the only disputed issue is whether collective arbitration is permitted under the Arbitration Clause.

### A. Authority to Order Collective Arbitration

At oral argument, Mork's counsel alluded for the first time to an argument that this Court should leave to the arbitrator the question of whether the Arbitration Clause permits collective arbitration. Neither party raised this issue in its written submissions to the Court, and the Court takes that silence as agreement that it should consider and resolve whether collective arbitration is

---

clauses are nearly identical, the Court refers to both collectively as the "Arbitration Clause."

permissible. In any event, the Court also concludes that the question of whether arbitration can proceed on a collective basis is appropriate for judicial determination in the first instance.

While questions of "procedural arbitrability" are generally left to the arbitrator, see Shopman's Local 493 v. EFCO Corp. & Const. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004), that rule does not extend to the question of whether collective arbitration may proceed. In 2003, a plurality of the Supreme Court indicated that courts should leave to the arbitrator the question of whether an arbitration agreement allows for class arbitration. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 453 (2003) (Breyer, J., plurality opinion). More recently, however, a majority of the Supreme Court clarified that Bazzle could not be read to hold that "an arbitrator, not a court, [should] decide whether a contract permits class arbitration." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1772 (2010) (noting that "only the plurality [had] decided that question" in Bazzle). The Stolt-Nielsen majority nonetheless declined to decide for itself who should determine whether class arbitration is permitted. Id. at 1772.

Without clear guidance from the Supreme Court, the Court is left with Eighth Circuit precedent which indicates that it is appropriate for the Court, not

an arbitrator, to resolve this question. In Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 728-29 (8th Cir. 2001), for example, the Court affirmed a District Court's decision to compel "appellants to submit their claims to arbitration as individuals" rather than on a class basis. The Court of Appeals did not question the District Court's authority to make that determination in the first instance.

Thus, while the Court concludes that the parties' silence indicates their acquiescence to the Court's determination of whether collective arbitration is permitted under the Arbitration Clause, the Court also concludes that it, rather than an arbitrator, should decide the issue.

**B. Agreement to Collective Arbitration**

**1. Standard**

The scope of an arbitration agreement is determined with reference to the agreement of the parties as evidenced by the terms of "the arbitration agreement itself or [based on] some background principle of contract law that would affect its interpretation." See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1750 (2011). The Court must "give effect to the contractual rights and expectations of the parties." Stolt-Nielsen, 130 S. Ct. at 1774 (citation omitted); see Mitsubishi

Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) ("as with any other contract, the parties' intentions control"). Imposition of a particular type of arbitration cannot be based solely "on policy judgments." Concepcion, 131 S. Ct. at 1750. Like any contract dispute, however, ambiguities in the agreement must be construed against the drafter. See, e.g., Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 588 (8th Cir. 2002).

In facing the question of whether to compel collective versus individual arbitration, the Court must therefore determine what the parties agreed to in the Arbitration Clause. A mere agreement to arbitrate, without more, does not imply agreement to collective arbitration. Cf. Stolt-Nielsen, 130 S. Ct. at 1775. This approach is consistent with Eighth Circuit precedent in the context of class arbitrations, Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 728-29 (8th Cir. 2001), and consolidation of individual arbitrations, Baesler v. Cont'l Grain Co., 900 F.2d 1193, 1195 (8th Cir. 1990). In Emerson and Baesler, the Eighth Circuit held that an arbitration agreement must provide for the type of arbitration which is sought to be compelled by the Court.

Loram urges a restrictive reading of Baesler, Emerson, and Stolt-Nielsen which would require explicit reference to, and acceptance of, collective

arbitration in order for Mork's claim to proceed on a collective basis. Those cases do not stand for such a strict standard. In Stolt-Nielsen, the Supreme Court's statement that an intention to authorize class arbitration cannot be "infer[red] solely from the fact of the parties' agreement to arbitrate," Stolt-Nielsen, 130 S. Ct. at 1775 (emphasis added), indicates that such an intention may be inferred and need not be explicitly stated.[2] The majority in Stolt-Nielsen therefore "[did] not insist on express consent to class arbitration." Id. at 1783 (Ginsburg, J., dissenting). Accordingly, "Stolt-Nielsen does not foreclose the possibility that parties may reach an 'implicit'—rather than express—'agreement to authorize class-action arbitration.'" Jock v. Sterling Jewelers Inc., 646 F.3d 113, 123 (2d Cir. 2011); see Jones v. St. Paul Cos., Inc., 495 F.3d 888, 893 (8th Cir. 2007) ("[F]ederal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . [the dicta] is of recent vintage and not enfeebled by any [later] statement.") (internal quotation marks and citations omitted).

---

[2] Contrary to the positions of the parties here, the parties in Stolt-Nielsen "stipulated that there was 'no agreement' on the issue of class-action arbitration." 130 S. Ct. at 1776 n.10. The Supreme Court therefore had "no occasion" to set out the precise contours of the "contractual basis" required to "support a finding that the parties agreed to authorize class-action arbitration." Id.

In sum, the question before the Court is not whether the Arbitration Clause used the precise words "collective arbitration." Rather, the Court must determine whether the Arbitration Clause evinces sufficient indicia of agreement between the parties that a claim within its scope may proceed on a collective basis. In doing so, the Court must keep in mind that Loram drafted the language of the Arbitration Clause and, therefore, that ambiguities must be construed against it. Advantage Consulting, 306 F.3d at 588.

The Court notes that the test from Stolt-Nielsen stated here may be more stringent that the appropriate test for contracts of adhesion. See Stolt-Nielsen, 130 S. Ct. at 1783 (Ginsburg, J., dissenting) ("[T]he Court apparently spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis."). Because the Court concludes that the Arbitration Clause does affirmatively authorize collective arbitration, there is no need to address whether the CAA was a contract of adhesion and therefore subject to a less stringent standard. The Court notes, however, that the parties here, unlike those in Stolt-Nielsen, are not both "sophisticated business entities" with comparable bargaining power, see id. at 1775, and the CAA appears to have been a "take-it-or-leave-it" boilerplate contract.

**2. Indicia of Agreement to Collective Arbitration**

While the parties distinguish between "express" and "implied" agreement to collective arbitration, as discussed above, the relevant question is whether there exists sufficient indicia that the parties agreed to undertake collective arbitration in the event of an employment dispute. While the Arbitration Clause does not refer explicitly to collective claims, the Court concludes that it does authorize such claims to proceed before an arbitrator.

To begin, the Arbitration Clause applies to "claims or disputes of any nature arising out of or relating to the employment relationship" and "statutory claims . . . arising out of or resulting from [Mork's] employment with Loram." (CAA ¶ 8 (emphasis added).) Mork's claim that he and similarly situated coworkers were deprived of overtime pay is undisputedly related to "the employment relationship" and his FLSA claim is "statutory." An action arising from FLSA violations "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). Thus, Mork has a statutory right

to bring a FLSA claim on behalf of himself and similarly situated Field Application Technicians, and such a claim arises out of his employment relationship with Loram.

Loram contends that Mork's ability to bring a claim on behalf of similarly situated employees is foreclosed because the Arbitration Clause's references to potential arbitral parties include only Loram and Mork. For example, the Arbitration Clause provides that the arbitrator will have "exclusive authority to resolve any dispute or claim relating to, arising out of, or resulting from <u>my employment</u> with Loram" and the "statutory claims" covered by the Arbitration Clause are those "arising out of or resulting from <u>my employment</u> with Loram or the formation or the termination of <u>my employment</u> with Loram." (CAA ¶ 8 (emphasis added).) These statements, Loram argues, show that the Arbitration Clause does not authorize collective arbitrations.

The Court is not persuaded that the Arbitration Clause's particular reference to disputes between Mork and Loram must be read to preclude a collective claim. Mork's FLSA claim is no less a claim "arising out of [his] employment with Loram" because it implicates similarly situated employees. The FLSA claim remains "his." Viewed in even the most charitable light,

Loram's argument only creates some amount of ambiguity in the Arbitration Clause—ambiguity that must be resolved in Mork's favor. Advantage Consulting, 306 F.3d at 588.

The conclusion that the Arbitration Clause permits collective arbitration is also supported by the contrast between its broad delegation of "any claims and disputes" to arbitration and its exclusion of only "claims or disputes [arising out of the CAA], or the breach, termination or invalidity thereof." (CAA ¶ 8.) By negative implication, collective arbitration—a type of arbitration not expressly excluded—can be presumed to be covered by the wide ranging terms of the Arbitration Clause, particularly in light of the factors already discussed.

The Court further notes that the Arbitration Clause provides that arbitration be conducted in accordance with model rules provided by the American Arbitration Association ("AAA") "in force at the time of the claim or dispute" and that the AAA "shall administer any such arbitration." (CAA ¶ 8.) The AAA's "Policy on Class Arbitrations" states that the AAA will "administer demands for class arbitration . . . if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent

with respect to class claims, consolidation or joinder of claims." See American Arbitration Association, Policy on Class Arbitrations, July 14, 2005, available at http://www.adr.org/sp.asp?id=25967. Even as interpreted by Loram, the Arbitration Clause in this case satisfies both criteria.

While this AAA policy was promulgated after the execution of the Arbitration Clause, the parties here agreed to be bound by the AAA rules in force "at the time of the claim or dispute." (CAA ¶ 8.) The parties thus intended to be bound by future iterations of those rules. Loram's decision to follow and abide by AAA rules therefore lends further support to the Court's conclusion that the Arbitration Clause authorizes collective arbitration.

It is important to note that Mork has not moved the Court to consolidate otherwise independent actions into a single proceeding as was the case in Baesler, 900 F.3d at 1194-95. Rather, Mork seeks to proceed with a single, statutorily prescribed collective claim. Consolidation is a method by which a Court may efficiently resolve otherwise legally independent claims which happen to share a common question of law or fact. See Fed. R. Civ. P. 42(a). A FLSA collective action, in contrast, is a mechanism in which one claim can vindicate the rights of many. If Mork were seeking consolidated treatment of

independent claims brought by employees, the Court would hesitate in considering those claims as "arising out of or resulting from [Mork's] employment with Loram." (See CAA ¶ 8.)

The Court also notes that some of the concerns raised by the Supreme Court about class arbitration are not present in the sort of collective arbitration sought by Mork. For one, a FLSA collective action is unlike a class action under Rule 23 of the Federal Rules of Civil Procedure because similarly situated employees must always "opt-in" to a FLSA action. See 29 U.S.C. § 216(b). Worries about an arbitrator "adjudicat[ing] the rights of absent parties" without affording them the full panoply of protections provided in court are therefore greatly diminished. See Stolt-Nielsen, 130 S. Ct. at 1776.

Finally, while fully cognizant that policy judgments may not be dispositive in this legal analysis, see Concepcion, 131 S. Ct. at 1750, the Court would be remiss if it did not briefly address the consequences of adopting a rule that an arbitration agreement cannot allow for collective or class arbitration except where the agreement explicitly uses and ratifies those precise terms. Such a rule would lead to great uncertainty, calling into question the countless arbitration agreements that have been executed in the shadow of a less stringent rule.

Moreover, the adoption of such a rule would likely prevent the vindication of workers' basic rights under the FLSA. See Sutherland v. Ernst & Young LLP, 768 F. Supp. 2d 547, 553-54 (S.D.N.Y. 2011).

For the above reasons, the Court concludes that the Arbitration Clause in the CAA authorizes collective arbitration of Mork's FLSA claim. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Scott Mork is hereby compelled to pursue the claims alleged in his Collective Action Complaint [Docket No. 1] in arbitration.

2. Mork may pursue his claim under the Fair Labor Standards Act, 29 U.S.C. § 216(b), on a collective basis.

3. This action is hereby stayed pending the conclusion of such arbitration.

Dated: January 8, 2012

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court